UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| GLENNIS STEWART, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2:16 CV 82 CDP |
| | ) |
| CORIZON MEDICAL, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

Plaintiff Glennis Stewart, currently incarcerated within the Missouri Department of Corrections (MDOC), was diagnosed with breast cancer in early 2013. She had a double mastectomy, multiple breast reconstruction surgeries, and four rounds of chemotherapy while in state custody. Over the following years, Stewart was in and out of prison, eventually being re-incarcerated in July 2015 for her current sentence. In November 2016, Stewart filed this *pro se* action under 42 U.S.C. § 1983, alleging civil rights violations from defendants' deliberate indifference to her serious medical needs. Defendants are the MDOC medical services provider, a medical director, and a nurse. Defendants were previously granted partial summary judgment on Stewart's unexhausted claims. Now they seek summary judgment on Stewart's remaining claims concerning a delay in receiving adequate cancer care and medications.

Stewart alleges that the delayed medical care that she has received from the MDOC defendants has increased her risk of cancer recurrence and has caused her pain. Defendants argue that the undisputed evidence demonstrates no deliberate indifference to Stewart's serious medical needs. There is no doubt that Stewart's receipt of certain medications has been delayed; however, Stewart has demonstrated no detrimental effect to her health from any delay in medical treatment or medication. In addition, there is no evidence of intentional denial or delay in treatment by defendants. Summary judgment will be granted to defendants.

## **Background**

Plaintiff Glennis Stewart is currently incarcerated within the Missouri Department of Corrections at the Chillicothe Correctional Center. Her § 1983 complaint alleges violations of her civil rights during her imprisonment at the Women's Eastern Reception, Diagnostic, and Correctional Center (WERDCC) in Vandalia, Missouri. She contends that defendants Corizon Medical, LLC (the contracted medical provider for MDOC inmates), Dr. Justin Jones (Medical Director at WERDCC), and Danielle Halterman (Nurse at WERDCC) delayed in providing her necessary treatment and medications, given her history and past treatment for cancer.

Defendants submitted the extensive medical records for Stewart, dating back to a January 2013 routine mammogram that revealed abnormalities. Because further medical testing confirmed an aggressive type of breast cancer, Stewart had a double mastectomy and concurrent breast reconstruction. Almost immediately following the surgery, Stewart suffered complications from the breast reconstruction. The left breast implant ruptured, requiring replacement with a silicone implant. Soon after replacement, Stewart had an open wound on her left breast with a cellulitis infection and exposure of her implant. She started antibiotics for the infection but eventually she had the implant surgically removed and the wound closed. Three months later, Stewart had another surgery to insert new silicone implants in both breasts. Following the double mastectomy, Stewart received four rounds of chemotherapy and started medication for the treatment and prevention of further breast cancer and for hot flashes.

In November 2013, two days after receiving her new silicone implants, Stewart was released from MDOC custody. While out of custody, she received medical treatment at the Chub O'Reilly Cancer Center in Springfield, Missouri. In April 2014, the Chubb doctor noted that Stewart was bleeding vaginally and is "now not post menopausal." ECF No. 46-8 at 117. As a result, Stewart started

Lupron[1] injections on April 17, 2014, which were to be given every three months. ECF No. 46-8 at 125, 46-7 at 140. She received additional injections at Chubb on July 25, 2014, and October 27, 2014. ECF No. 46-8 at 2, 13.

Stewart was incarcerated again from February 19 to March 25, 2015. Upon re-incarceration in February 2015, Stewart informed a nurse at intake that she was currently on "Lupron shot to keep in menopause." ECF No. 46-5 at 22, 24. After being released from custody in March 2015, Stewart received another Lupron injection at Chubb Cancer Center on May 11, 2015.[2]

Stewart returned to WERDCC, about four months later, on July 31, 2015. The records from her medical intake exam in July 2015 contain no mention of her history of Lupron injections. ECF No. 46-4 at 99-107. However, according to Stewart, she told the intake nurse about the Lupron "but the nurse didn't know what Lupron was and therefore ignored [her]." ECF No. 38 at 3. Stewart did

---

[1] According to the U.S. Food and Drug Administration's website, when Lupron is continuously administered to premenopausal females, it reduces the patient's estrogen levels to postmenopausal levels. *Lupron Depot label,* https://www.accessdata.fda.gov/drugsatfda_docs/label/2011/020517s031lbl.pdf (last visited July 5, 2018).

[2] According to defendants, Stewart received her first dose of Lupron when she "went to Mercy Clinic Rogersville and received a Lupron injection on May 11, 2015." ECF No. 48 ¶ 36. Dr. Jones states that the medical records mention Lupron in April 2015 but do not list it as a current medication, and that the records do not confirm Stewart received Lupron until May 2015. ECF No. 36-6 ¶ 41. Admittedly, the medical records are confusing but I disagree.
Records from Mercy Clinic Rogersville, a family medicine facility, refer to medications Stewart received "In Other Visits" and lists Lupron as being given on May 11, 2015 by a named nurse who worked at the Chubb Cancer Center. ECF No. 46-8 at 23, 61. The Mercy Clinic Rogersville April 2015 records do not list Lupron as a current facility-administered medication because it was not administered at that facility, but at Chubb. The Chubb records also indicate that Stewart received Lupron injections in April, July, and October 2014; therefore, the May 2015 dose was not Stewart's first injection of Lupron. ECF Nos. 46-7 at 140, 46-8 at 2, 13.

report being on Lupron in her mental health intake evaluation on September 17, 2015. ECF No. 46-1 at 134.

Medical records for July through October 2015 indicate that medical staff (including defendant Dr. Jones) ordered medications regularly for Stewart including the cancer medication Arimidex,[3] but not Lupron injections. ECF No. 46-4 at 53, 61, 65-67, 72, 73, 81, 95. Stewart was seen by an OBGYN; was enrolled in the cancer chronic care clinic; had an EKG, x-rays, and lab work done; and was being seen by a MDOC psychiatrist. ECF Nos. 46-1 at 133-37, 46-4 at 55, 57, 58, 60, 92.

*WERDCC Complaint Number 15-404*[4]

On October 15, 2015, Stewart filed IRR complaint number WERDCC-15-404, alleging that she was not receiving adequate "cancer treatment and relevant medications," including Lupron injections and Gabapentin[5] as prescribed by her oncologist. ECF No. 36-5 at 36. She also requested to be seen by defendant Dr.

---

[3] According to the U.S. Food and Drug Administration's website, Arimidex is prescribed after initial cancer treatment for postmenopausal women with hormone receptor-positive early breast cancer. It offers no clinical benefit to premenopausal women with breast cancer. *Arimidex (anastrozole) tablet label*, https://www.accessdata.fda.gov/drugsatfda_docs/label/2011/020541s026lbl.pdf (last visited July 5, 2018).

[4] Stewart has filed multiple medical grievance complaints; however, my Order in this case dated October 26, 2017, found that Stewart had only exhausted her administrative remedies, as required by the Prison Litigation Reform Act (PLRA), on two of the grievances that she filed. *See* ECF No. 32; 42 U.S.C. § 1997e(a). Only allegations raised by Stewart in grievance complaint numbers WERDCC-15-404 and WERDCC-16-225 survived dismissal.

[5] Gabapentin is the generic name for Neurontin – the two names are used interchangeably throughout the medical records and pleadings. *See* ECF No. 35 at 4 n.5. As plaintiff uses 'Gabapentin' in her grievance filings, it will be used in this Order.

Jones. Stewart met with defendant nurse Danielle Halterman on October 26 and informed her that she needed Lupron injections every three months. Halterman said she would discuss the Lupron with Dr. Jones. The MDOC written response to the IRR, dated October 26, 2015 and signed by defendant nurse Halterman, notes that Stewart had not made recent visits to nurse sick call, that she was enrolled in the chronic care clinic for her history of cancer, that her records would be reviewed at her scheduled appointment, and therefore, her current medical needs were being addressed. *Id.* at 35.

Stewart filed a follow-up grievance 15-404 on November 16, 2015, reiterating that she felt her cancer treatment care was inadequate, especially the lack of Lupron as prescribed by her oncologist. *Id.* at 33-34. She argued that the medical records department already had the Lupron records from her outside oncologist yet she still was not receiving Lupron and had already missed two injections in July and October. Stewart stated that the "chemo pill" (Arimidex), that she takes every morning, only works when taken with the needed Lupron shot. She also requested acid reflux medication, Gabapentin for severe hot flashes, Biotene for dry mouth, and she complained of not being seen or evaluated by the cancer clinic since her arrival. *Id.* The grievance response, dated January 4, 2016,

stated that "Medical records is obtaining your outside medical records, once they are all received you'll be scheduled for your chronic care visit."[6] *Id.* at 32.

In Stewart's appeal of 15-404, filed January 12, 2016, she stated that she had been to the medical records department and had her Lupron records pulled. *Id.* at 29. Defendant nurse Halterman then showed the records to defendant Dr. Jones. By January 14, 2016, Dr. Jones had seen the records because he noted in Stewart's medical chart: "suppose to be on Lupron shots every three months. last one may 2015." ECF No. 46-4 at 24. Stewart also mentioned in her appeal that she had stopped taking her "chemo pill" because she had started bleeding vaginally due to not receiving Lupron.[7] ECF No. 36-5 at 29. The response to the appeal stated that Stewart had been seen by the community oncologist on February 5, 2016, and that she had been prescribed the recommended medications including Gabapentin, Prilosec, and Lupron. *Id.* at 28. Medical records for February 5, 2016, indicate that Stewart was approved for Gabapentin and for Lupron with priority status "Urgent," to be given "asap." ECF No. 46-4 at 15-16, 11, 13. However, Stewart

---

[6] In fact, as stated by Dr. Jones in his declaration, Stewart's medical records from her oncologist at Chubb, clarifying that she had received Lupron in May 2015, had actually already been received by the medical staff at the time of the Grievance Response. ECF No. 36-3 ¶ 41. On October 29, 2015, the records from Chubb were received and given to a different doctor. Dr. Jones states that he was unaware of the records. However, the MDOC computer system has a notation of the receipt of these records. ECF No. 46-4 at 51.

[7] The outside oncologist that Stewart eventually saw on February 5, 2016, through a WERDCC-approved referral, also noted that "Arimidex or any aromatase inhibitor is completely ineffective in a premenopausal [patient]" and therefore Stewart "needs Lupron … now/ASAP." ECF No. 46-5 at 41.

did not actually receive the Lupron injection for eleven more days – on February 16, 2016. ECF No. 46-3 at 147.

*WERDCC Complaint Number 16-225*

On June 21, 2016, Stewart filed IRR complaint number WERDCC-16-225, arguing that Dr. Jones should not have taken her off the medication Gabapentin, which had been prescribed by her oncologist for hot flashes and fibromyalgia. ECF No. 36-5 at 48-49. The MDOC classifies Gabapentin as a "watch take" medication, such that the offender is required to take the medication in the presence of medical staff. *Id.* at 47. On June 10, 2016, Stewart received a "Conduct Violation" after a Gabapentin pill was found wrapped in a piece of tissue in her locker. ECF No. 46-9 at 140-41. Stewart admits to having the pill. ECF Nos. 38 at 27, 40 at 8. As a result of the violation and the fact that Gabapentin is commonly abused within the correctional setting, Dr. Jones said she would be "weaned off" of Gabapentin. ECF Nos. 46-3 at 59, 36-6 ¶ 107. The MDOC response to Stewart's IRR explained that Stewart was taken off Gabapentin because "it being found in [her] possession" and because her provider determined that she does "not need this medication at this time." ECF No. 36-5 at 47.

Stewart filed a follow-up grievance and appeal of 16-225, complaining that her oncologist had recently recommended doubling her dose of Gabapentin but instead she was being denied it altogether when no other medication has worked as

effectively for her hot flashes. *Id.* at 45-46, 41-43. Stewart argued that the conduct violation should not result in denial of the medication altogether but just that the pill be crushed before ingestion. *Id.* at 43, 46. The MDOC response pointed out that Stewart's own actions had resulted in the medication denial, but also questioned whether she actually needed the medication since she had informed a nurse on August 10, 2016 that her hot flashes had resolved. *Id.* at 44. In addition, Stewart had been prescribed multiple other medications to address her hot flashes. *Id.* at 40. Approximately six months after the initial IRR was filed, on December 15, 2016, Stewart was again prescribed Gabapentin. ECF No. 46-2 at 106-07.

Defendants now move for summary judgment on the claims raised by WERDCC grievance filings 15-404 and 16-225,[8] arguing that there is no evidence

---

[8] Defendants describe Stewart's complaints as pertaining to five aspects of her care and treatment: (1) Lupron injections; (2) referral to an outside oncologist; (3) denial of diagnostic testing; (4) Gabapentin; and (5) breast reconstruction. ECF No. 35 at 13-15. I agree that the two exhausted grievances at issue here pertain to Lupron, Gabapentin, and general cancer care including treatment by an oncologist. However, medical decisions regarding Stewart's care made after the filing of these grievances have not been exhausted and are not at issue here.

As for 'referral to an outside oncologist,' I agree grievance 15-404 seeks a medical examination with an oncologist. ECF No. 36-5 at 34, 36. However, defendant Corizon's June 2016 decision to continue Stewart's cancer care with in-house physicians, instead of through an outside oncologist, is not at issue here. *See* ECF No. 46-3 at 56. Stewart had seen the outside oncologist eight days before this June 2016 decision and there is no indication she had even been informed of the decision (nor does she mention it) when she filed her second grievance, 16-225, four days later. She does raise this issue in WERDCC IRR 16-431, but claims relating to that complaint were found unexhausted and dismissed. *See* ECF No. 32.

As for 'diagnostic testing,' Stewart admits in grievance 15-404 that she has had some "labs concerning [her] breast cancer" and in the appeal filing she mentions that Dr. Jones is "waiting on" lab results. ECF No. 36-5 at 30, 36. Stewart does raise the issue of not receiving "chest x-rays or other testing" in WERDCC IRR 16-430, but claims pertaining to that complaint were

of deliberate indifference to Stewart's serious medical needs. Stewart contends that a "reasonably competent physician" would have handled her care differently and that actions by the defendants were "medical" and "gross negligence." ECF Nos. 38 at 25-27, 40 at 10.

## **Legal Standards**

The standards for summary judgment are well settled. In determining whether to grant a motion for summary judgment, the court views the facts – and any inferences from those facts – in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant bears the burden of establishing that (1) it is entitled to judgment as a matter of law and (2) there are no genuine issues of material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, however, the non-moving party may not rest on the allegations in its pleadings but must, by affidavit and other evidence, set forth

---

found unexhausted and dismissed. *See* ECF No. 32. The exhausted grievances here seek diagnostic testing only to the extent that they are part of general cancer care and treatment.

As for 'breast reconstruction,' Stewart's IRR 16-225 mentions a "rip" in her left breast, but it is not mentioned again in her follow-up grievance or appeal filings. ECF No. 36-5 at 41-49. Stewart's 15-404 IRR and grievance make no mention of implant problems but her appeal of 15-404 describes "silicone leakage." *Id.* at 29-36. There is no doubt from Stewart's medical records that she has suffered many complications since her initial breast reconstruction surgery. However, the exhausted claims at issue here do not address these issues. Even if breast reconstruction was at issue here, Stewart had her left breast implant replaced on March 25, 2016, and an outside consulting plastic surgeon agreed with the Corizon OBGYN that no further surgery was required in January 2017. ECF No. 46-2 at 82-83, 46-3 at 128. The March 2016 surgery demonstrates that defendants are treating this medical need and the January 2017 decision that no further surgery is required, indicates no detrimental effect on Stewart.

specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587. At the summary judgment stage, I will not weigh the evidence and decide the truth of the matter, but rather I need only determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prove her deliberate indifference claim, Stewart is required to show she suffered from an objectively serious medical need and that defendants knew of the need but deliberately disregarded it. *Meuir v. Green County Hail Emps.*, 487 F.3d 1115, 1118 (8th Cir. 2007). "Deliberate indifference is more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Fourte v. Faulkner Cty., Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (internal quotation marks and citation omitted). Deliberate indifference may be found where "medical care [is] so inappropriate as to evidence intentional maltreatment." *Id*. In other words, Stewart must show something more

than medical malpractice – she must show that defendants actually knew of a serious need and ignored it or were otherwise deliberately indifferent to it.

**Discussion**

Stewart's grievances complain of inadequate cancer care and medications. However, Stewart eventually received the requested medications of Lupron, Gabapentin, and Prilosec. She was also eventually treated in the WERDCC cancer care clinic and seen by an outside oncologist. Her complaint of deliberate indifference relates to the delay in receiving these medications and specialist appointments.

"To prevail on a claim that a delay in medical care constituted cruel and unusual punishment, an inmate must show both that: (a) the deprivation alleged was objectively serious; and (b) the prison official was deliberately indifferent to the inmate's health or safety." *Jackson v. Riebold*, 815 F.3d 1114, 1119-20 (8th Cir. 2016) (citing *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)). When a deliberate-indifference claim is based on an alleged delay in medical treatment, the objective seriousness of the deprivation is measured by reference to the effect of the delay. *Id.* The inmate must submit medical evidence to establish a detrimental effect from a delay in medical treatment. When applying this "detrimental effect" standard, the Eighth Circuit has previously found that where an inmate "submitted evidence documenting his diagnosis and treatment, [but] he offered no evidence

establishing that any delay in treatment had a detrimental effect," the inmate "failed to raise a genuine issue of fact on an essential element of his claim." *Id.* (citing *Dulany v. Carnahan*, 132 F.3d 1234, 1243 (8th Cir. 1997)).

There is no doubt that Stewart's receipt of the medication Lupron was delayed. She filed IRR 15-404 in October 2015. Jones denies being aware that Stewart had ever been prescribed Lupron injections or that she was pre-menopausal until December 2015. ECF No. 36-6 ¶ 36, 41. Whether defendants should have known about her history of taking Lupron from her intakes in February or July 2015,[9] or from the medical records received from Jordan Valley in August 2015,[10] or from the medical records received from Chubb Cancer Center in October 2015, Stewart did not eventually receive a Lupron injection until February 2016. As a result of the delay, Stewart suffered vaginal bleeding[11] and mental health stress and anxiety.[12] The medication Arimidex – which Stewart was

---

[9] Stewart also argues that medical records WERDCC requested and received from Mercy Hospital in February 2015 should have proven she was on Lupron. ECF No. 38 at 24. This dispute may be based on confusion in "Mercy Hospital" records. The Mercy Hospital Lebanon records dated "3/24/14," which were received by the MDOC on February 27, 2015, mention "Luteinizing Hormone" but contain no specific reference to Lupron injections. ECF No. 36-6 ¶ 29, 46-7 at 123. However, the Mercy Hospital Rogersville records dated "5/11/15" state that Stewart received a three-month Lupron injection on that date. ECF No. 46-8 at 61.

[10] Stewart argues that the records from Jordan Valley Clinic should have mentioned Lupron. ECF No. 38 at 3. I see no mention of Lupron in these records. *See* ECF No. 46-8 at 79-80.

[11] On December 9, 2015, Stewart reported to sick call that she was "starting to spot." ECF No. 46-4 at 46. In a January 6, 2016, appointment with Dr. Jones, Stewart reported vaginal bleeding for the previous six days and Jones noted that the bleeding was "[m]ost likely due to the Lupron being stopped." *Id.* at 34.

[12] In visits with mental health professionals at WERDCC between September and December 2015, Stewart reported stress or anxiety from "medical … stopping one of her cancer

taking for most of the time when she was not getting the Lupron injections – was ineffective without the Lupron to keep Stewart's body in a postmenopausal state. *See* n.3, 7. Stewart argues that she therefore suffered the painful side effects of Arimidex for many months without gaining any health benefit. ECF No. 38 at 6. She does not specifically state what those side effects are, but instead refers the court to "any book on medications for the severe side effects of Arimidex." *Id.* at 30. According to Dr. Jones, Stewart suffered no physical injury as a result of the delayed Lupron.[13] ECF No. 36-6 ¶ 105.

As for a delay in receiving Gabapentin, Stewart alleges she suffered pain from severe hot flashes and fibromyalgia. ECF No. 36-5 at 49. Stewart described the hot flashes as "everyday + night / all day & night … not just 'uncomfortable' – it is painful!" *Id.* at 34. In the months before Jones' decision to wean Stewart off of Gabapentin because of her conduct violation, Stewart's oncologist had actually recommended doubling her Gabapentin dosage multiple times. ECF No. 46-3 at 71, 105. Stewart claims she had "no quality of life" or "very poor" quality of life without Gabapentin because no other medication worked as effectively for her.

---

treatments," also that "medical is [not] doing their job very well," and that she was "stressed out about her cancer diagnosis." ECF No. 46-1 at 117, 124, 129.

[13] Stewart's response and reply briefs also mention a failure by defendants to provide her with consistent Lupron injections every three months during 2017 and 2018. ECF No. 38 at 6, 32, 40 at 5. These allegations are not addressed here as they do not relate to the two exhausted medical grievances filed in 2015 and 2016 that are at issue.

ECF No. 36-5 at 42, 46. After Stewart tried other medications for her hot flashes, she was eventually prescribed Gabapentin again.

Stewart also alleges a delay in receiving general cancer treatment. After her July 2015 re-incarceration, she received a physical exam on August 10, 2015, where the nurse noted that she should be enrolled in the chronic cancer care clinic. ECF No. 46-4 at 92. More than a month later, she still had not been seen in the clinic and the records note: "Make sure [patient] is seen in cancer clinic soon." *Id.* at 63. Stewart was not approved for a consult with the outside oncologist until January 6, 2016, and she did not actually see him until February 5, 2016. *Id.* at 11, 30. However, the medical records for July 2015 through February 2016 also show that Stewart was regularly prescribed medications including Arimidex, she saw an OBGYN, and she had diagnostic testing and lab work done. *Id.* at 53-95.

Although the records show that some of Stewart's treatment was delayed, there is no evidence that the delay was the result of deliberate indifference by any of the defendants. The undisputed evidence shows that Stewart was under continuous care and received treatment for her serious needs. Deliberate indifference requires more than mere negligence or mere disagreement about the type of treatment provided, which is all that the evidence here shows.

Although the records establish that Stewart suffered some side effects as a result of the delay in receiving medications, Stewart has failed to submit evidence

establishing that a delay in her care or medications had a detrimental effect on her health. Stewart alleges that the delay in Lupron increased her cancer risk and her "percentage of possible, even probable cancer recurrence." ECF No. 38 at 23, 38. However, her cancer is still in remission. Stewart's June 2016 appointment with the outside oncologist noted "no clinical evidence of recurrence." ECF No. 46-3 at 58. A July 2016 appointment with the in-house medical staff at the chronic cancer care clinic indicated an "unchanged" status. *Id.* at 41. And a chest x-ray in early November 2016 was concluded to be "benign." ECF No. 46-2 at 129.

As for her allegations of severe pain, some medical records indicate that her hot flashes were not very bad. ECF No. 46-3 at 41 (describing patient complaint as "some hot flashes"); 39 ("Exam today does not warrant increasing her pain meds"); 28 ("hot flashes resolved"). Also, soon after Stewart was re-prescribed Gabapentin for the hot flashes, she began refusing to take the medication. ECF No. 46-2 at 103, 101, 98, 97, 83. Plaintiff describes her refusals of the Gabapentin as "refusing daytime doses only" but such refusals create questions as to the level of her pain. ECF No. 38 at 5. Although it appears that Stewart suffered pain as a result of the delay in treatment and medications, the evidence "does not indicate an 'unnecessary and wanton infliction of pain' or treatment that is 'repugnant to the conscience of mankind.'" *Dulany*, 132 F.3d at 1241 (*quoting Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).

## Conclusion

Allegations of medical malpractice, inadvertent failure to provide adequate medical care, or simple negligence do not amount to a constitutional violation. *Estelle*, 429 U.S. at 106. There is no evidence that defendants here intentionally denied or delayed Stewart access to medical care or intentionally interfered with her treatment. To the contrary, the undisputed evidence shows that defendants continually addressed Stewart's medical conditions and provided care and treatment, just not at the pace or the timing preferred by Stewart. An inmate cannot create a question of fact by merely stating that she did not feel that she received adequate treatment. *Dulany*, 132 F.3d at 1240. Additionally, Stewart has not demonstrated a detrimental effect to her health resulting from a delay in her cancer care or medications. Defendants are entitled to summary judgment on Stewart's claim of deliberate indifference to her serious medical needs under the Eighth Amendment.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [#34] is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff's motion for subpoena of records and testimony of Dr. Snyder [#50] is **DENIED** as moot.

A separate judgment in accord with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 16th day of July, 2018.